**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAILY CALLER, | |
| Plaintiff, | |
| v. | Civil Action No. 15-1777 (BAH) |
| U.S. DEPARTMENT OF STATE, | Judge Beryl A. Howell |
| Defendant. | |

## MEMORANDUM OPINION

Beginning in the spring of 2015, numerous print, television, and internet media outlets began aggressively investigating and reporting on former Secretary of State Hillary Clinton's use of a private email server during her time at the U.S. Department of State ("State Department" or "agency"). The plaintiff, a 24-hour online news publication, submitted five requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to the State Department seeking the release of records potentially related to its ongoing coverage of this story. Although the State Department has acknowledged receipt of these requests, and has agreed to process each request on an expedited basis, the agency has neither completed its collection and review of potentially responsive records nor produced more than a small number of records in response to the plaintiff's requests.

Seeking to accelerate further the agency's processing of its outstanding requests, the plaintiff initiated this action on October 21, 2015. *See* Compl., ECF No. 1. Pending before the Court is the plaintiff's Motion for Preliminary Injunction, pursuant to Federal Rule of Civil Procedure 65, seeking an order requiring the State Department to collect, review and produce all non-exempt documents responsive to each of its outstanding requests within the next twenty

1

business days. Pl.'s Mot. Prelim. Injunc. ("Pl.'s Mot."), ECF No. 3; *see also* Compl. at 11–12. For the reasons discussed below, the plaintiff's motion is denied.[1]

## I.   BACKGROUND

With public attention turning to the 2016 presidential election, and former Secretary of State Clinton's candidacy for the Democratic nomination, the State Department has since late 2014 received numerous FOIA requests seeking documents related to various aspects of Clinton's tenure at the agency. In particular, following initial reports of Clinton's use of a private email server in early March 2015, *see* Michael S. Schmidt, *Hillary Clinton Used Personal Email Account at State Dept., Possibly Breaking Rules*, N.Y. TIMES (Mar. 2, 2015), numerous individual reporters and publications filed FOIA requests seeking State Department records related to this arrangement, including emails that were in the possession of former Secretary Clinton and members of her staff, Order Denying Mot. Designation of Coordinating Judge at 1, *In re: U.S. Dep't of State FOIA Litig. Regarding Emails of Certain Former Officials*, No. 15-mc-1188 (D.D.C. Oct. 8, 2015), ECF No. 41. These requests, and the attendant challenges in responding fully and on a timely basis to each request, have in turn begat extensive litigation against the State Department, with some three dozen cases stemming from these requests pending before this Court as of early October 2015. *Id.*

After the State Department's motion to designate a coordinating judge to oversee these cases was denied, *id.* at 2, the cases are proceeding separately and concurrently, resulting in various court orders requiring the agency to process and produce non-exempt documents

---

[1]     On November 6, 2015, at the Court's direction, the parties jointly submitted a briefing schedule to govern the resolution of the instant motion. *See* Joint Status Report & Proposed Briefing Schedule, ECF No. 12. The Court observes that, in proposing this briefing schedule, the parties necessarily agreed, and the Court finds, that a ruling on the plaintiff's application for preliminary injunction beyond the 21-day timeline set forth in Local Civil Rule 65.1(d) will not prejudice the parties. *See* LCvR 65.1.

responsive to many of the underlying requests. Most significantly, pursuant to an expansive request submitted by an investigative journalist in November 2014, the State Department is currently required to produce approximately 55,000 pages of responsive documents, on a rolling basis, by January 29, 2016. Scheduling Order, *Leopold v. U.S. Dep't of State*, No. 15-cv-123 (D.D.C. May 27, 2015) (the "*Leopold* Order"), ECF No. 17. Compliance with this and other production schedules is consuming a substantial portion of the agency's FOIA-processing resources, with roughly half of the agency's FOIA-related staff resources dedicated exclusively to processing Clinton email requests and the agency currently detailing and training additional analysts to assist with this work. Decl. John F. Hackett (Nov. 19, 2015) ("Hackett Decl.") ¶¶ 5–6, 15, ECF No. 14-1.

Among this flood of Clinton-related activity are the five requests at issue here, which the plaintiff submitted to the agency between March 2015 and August 2015. The plaintiff's requests are summarized as follows:

- FOIA Request F-2015-04623 (March 3, 2015), seeking all State Department processing notes stemming from six prior FOIA requests submitted by the plaintiff seeking information relating to Secretary Clinton's emails and those of her aides. Decl. Chuck Ross ("First Ross Decl.") ¶ 6, ECF No. 3-2.

- FOIA Request F-2015-04646 (March 5, 2015), seeking all communications, electronic or otherwise, sent to or from various senior State Department officials referring in any way to Secretary Clinton. *Id.* ¶ 11.

- FOIA Request F-2015-04997 (March 11, 2015), seeking all separation statements signed by Secretary Clinton or three former aides. *Id.* ¶ 15.

- ▪ FOIA Request F-2015-11536 (June 27, 2015), seeking all records handled by a State Department Undersecretary pertaining to Secretary Clinton's use of a personal email address and private server. *Id.* ¶ 19.

- ▪ FOIA Request F-2015-12685 (Aug. 5, 2015), seeking all employment records related to a former State Department special information technology advisor, as well as any emails sent to or from this advisor or sent to or from the previously referenced former Undersecretary referring to this advisor. *Id.* ¶ 23.

After acknowledging receipt of each of these requests, the State Department granted, on or before August 11, 2015, the plaintiff's further application for both expedited processing and a fee waiver as a member of the news media. *Id.* ¶¶ 6, 11, 15, 19; Sec. Decl. Chuck Ross (Nov. 24, 2015) ("Sec. Ross Decl.") ¶ 19, ECF No. 17-1. While failing to provide a definite time limit for its processing of each of these requests, First Ross Decl. ¶¶ 8, 12, 16, 20, 25, the agency has notified the plaintiff that certain of the sought-after documents have been made publicly available on the agency's website in response to other outstanding FOIA requests, Hackett Decl. ¶ 12.

To process the plaintiff's requests, the agency has assigned a designated FOIA analyst to coordinate the search for and review of potentially responsive records. *Id.* ¶ 15. As of November 19, 2015, the agency's Director of Information Programs and Services reports that this effort is ongoing, and the agency has yet to determine the total volume of potentially responsive records. *Id.* Further, because many of the records sought by the plaintiff may include sensitive national security and diplomatic material, as well as personally identifiable information of current and former State Department employees, the agency has indicated that any responsive documents will require additional evaluation by senior reviewers with specialized expertise and

credentials. *Id.* ¶ 17–18. Although many of these senior reviewers are currently assigned to the agency's response to the *Leopold* Order, *id.* ¶ 18, a reviewer with the necessary credentials and expertise is expected to be available to assist in processing the plaintiff's requests in February or March 2016, *id.* ¶ 22.

Nonetheless, not content with the current processing pace, and contending that the agency is under a strict duty to process fully all FOIA requests within twenty days of receipt, the plaintiff filed this action to hasten the release of all non-exempt agency records responsive to its various requests. *See* Pl.'s Mot. Specifically, the plaintiff requests a court order requiring the agency to: (1) expedite processing of each of the plaintiff's outstanding FOIA requests;[2] (2) make final determinations for each of those requests and produce all responsive documents within twenty business days; and (3) issue a *Vaughn* index to accompany each of these productions.[3] *Id.*

## II.    LEGAL STANDARD

"'A [party] seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest.'" *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014) (alteration in original)

---

[2]    In initiating this action, the plaintiff initially sought an order compelling the agency to grant the plaintiff's request for expedited processing of its August 5, 2015 request. Compl. at 11. In subsequent filings, however, the parties indicate that the State Department granted this request on August 11, 2015. *See* Pl.'s Reply Supp. Pl.'s Mot. Prelim. Injunc. at 3 n.3, ECF No. 17 (citing Hackett Decl. ¶ 14 & Ex. 5 and Sec. Ross Decl. ¶¶ 19–20). Accordingly, the plaintiff's request for injunctive relief on this score is denied as moot.

[3]    A *Vaughn* index identifies agency records responsive to a FOIA requests that are withheld from disclosure under one or more statutory exemptions. *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). As the defendant correctly notes, Def.'s Opp'n Pl.'s Mot. Prelim. Injunc. at 17, such an index generally accompanies the parties' dispositive motions, *see Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 187 n.5 (D.C. Cir. 2013) (explaining that an agency generally is not required to provide a *Vaughn* index absent a corresponding dispositive motion pending before a court). With no dispositive motion currently pending, the plaintiff's basis for requesting such an index at this stage of the litigation is difficult to identify.

(quoting *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011)). A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (emphasis in original) (quoting 11A C. Wright, A. Miller, & M. Kane, FEDERAL PRACTICE AND PROCEDURE § 2948 (2d ed. 1995)).

The D.C. Circuit has, in the past, followed the "sliding scale" approach to evaluating preliminary injunctions, where "a court, when confronted with a case in which the other three factors strongly favor interim relief may exercise its discretion to grant [preliminary relief] if the movant has made a substantial case on the merits." *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977). Thus, under the sliding scale approach, "[i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." *Davis v. Pension Ben. Guar. Corp.*, 571 F.3d 1288, 1291–1292 (D.C. Cir. 2009).

The viability of the sliding scale approach is questionable, however, in light of the Supreme Court's holding in *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008), that a court may not issue "a preliminary injunction based only on a possibility of irreparable harm [since] injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *See Davis*, 571 F.3d at 1296 (Kavanaugh, J., concurring) (noting that, after *Winter*, "the old sliding-scale approach to preliminary injunctions—under which a very strong likelihood of success could make up for a failure to show a likelihood of irreparable harm, or vice versa—is no longer controlling, or even viable" (internal quotations and citation omitted)); *see also In re Navy Chaplaincy*, 738 F.3d 425, 428 (D.C. Cir. 2013) (requiring proof that all four prongs of preliminary injunction standard are met

6

before injunctive relief can be granted). Thus, the plaintiffs bear the burden of persuasion on all four preliminary injunction factors in order to secure such an "extraordinary remedy."

Finally, where, as here, the plaintiff's requested injunction is "mandatory—that is, where its terms would alter, rather than preserve, the *status quo* by commanding some positive act," judges on this Court have required the moving party to "meet a higher standard than in the ordinary case by showing clearly that he or she is entitled to relief or that extreme or very serious damage will result from the denial of the injunction." *See, e.g.*, *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 15 F. Supp. 3d 32, 39 (D.D.C. 2014) ("*EPIC II*") (collecting cases); *Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo-Mitsubishi Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997) *aff'd*, 159 F.3d 636 (D.C. Cir. 1998).[4]

## III.   DISCUSSION

Filed concurrently with the plaintiff's initial Complaint, the instant motion is striking both in its mandatory nature and in the scope of preliminary relief the plaintiff requests. Indeed, in seeking a preliminary order requiring the State Department to process fully the plaintiff's outstanding FOIA requests, and produce all responsive non-exempt documents within twenty business days, the plaintiff essentially requests the full relief it seeks in filing its underlying Complaint. *Compare* Pl.'s Mot. *with* Compl. at 11–12 ("Relief Requested"). The D.C. Circuit

---

[4]        The D.C. Circuit has not opined on the issue, but application of a heightened standard of review to requests for mandatory preliminary injunctive relief has been adopted by other Circuits. *See, e.g.*, *Pashby v. Delia*, 709 F.3d 307, 319–20 (4th Cir. 2013) (observing that "heightened standard of review" would apply to mandatory injunctions); *Fundamentalist Church of Jesus Christ of Latter-Day Saints v. Horne*, 698 F.3d 1295, 1301 (10th Cir. 2012) (noting that, to obtain a "disfavored" mandatory preliminary injunction, "the movant has a heightened burden of showing that the traditional four factors weigh heavily and compellingly in its favor" (citing *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1154–55 (10th Cir. 2001))); *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (holding that "'a mandatory preliminary injunction that alters the *status quo* by commanding some positive act . . . should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from denial of preliminary relief'" (quoting *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010))); *cf. Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 834–35 & n.31 (D.C. Cir. 1984) (declining to express a view on whether "a heightened showing should in fact be required" where plaintiff seeks "a mandatory preliminary injunction").

has cautioned that a preliminary injunction generally "should not work to give a party essentially the full relief he seeks on the merits." *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 n.13 (D.C. Cir. 1969) (citing *Selchow & Righter Co. v. W. Printing & Lithographing Co.*, 112 F.2d 430 (7th Cir. 1940)); *see also Diversified Mortgage Inv'rs v. U.S. Life Ins. Co. of N.Y.*, 544 F.2d 571, 576 (2d Cir. 1976) (collecting cases). Thus, in reviewing the present motion, the Court is cognizant that an order granting the requested relief would effectively serve as a summary ruling on the parties' underlying dispute, without the aid of additional factual support and briefing generally available in assessing traditional dispositive motions.

With this in mind, the plaintiff's request for immediate injunctive relief is analyzed below after an overview of the relevant statutory and regulatory provisions applicable to the plaintiff's outstanding FOIA requests.

### A.    Statutory and Regulatory Framework

Congress enacted the FOIA as a means "to 'open agency action to the light of public scrutiny,'" *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 750 F.3d 927, 929 (D.C. Cir. 2014) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)), and "to promote the 'broad disclosure of Government records' by generally requiring federal agencies to make their records available to the public on request," *DiBacco v. U.S. Army*, 795 F.3d 178, 183 (D.C. Cir. 2015) (citing *Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988)).  As the Supreme Court has "consistently recognized[,] . . . the basic objective of the Act is disclosure." *Chrysler Corp. v. Brown*, 441 U.S. 281, 290 (1979).  At the same time, however, the statute represents a "balance [of] the public's interest in governmental transparency against legitimate governmental and private interests that could be harmed by release of certain types of information." *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 559 (D.C. Cir. 2010) (internal quotation marks and citations

omitted).   Reflecting that balance, FOIA contains nine exemptions set forth in 5 U.S.C. § 552(b), which "are explicitly made exclusive and must be narrowly construed." *Milner v. U.S. Dep't of Navy*, 562 U.S. 562, 565 (2011) (internal quotation marks and citations omitted) (citing *FBI v. Abramson*, 456 U.S. 615, 630 (1982)); *see also Murphy v. Exec. Office for U.S. Attorneys*, 789 F.3d 204, 206 (D.C. Cir. 2015).

Under both the statute and the State Department's implementing regulations, the agency generally must determine within twenty days after receipt of a FOIA request "whether to comply with such request." 5 U.S.C. § 552(a)(6)(A)(i); *see also* 22 C.F.R. § 171.12(d).[5]  Upon making this determination, the agency is required to "immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination." 5 U.S.C. § 552(a)(6)(A)(i).  Thereafter, where the agency identifies responsive, non-exempt records, "the records shall be made promptly available to such person making [the] request." *Id.* § 552(a)(6)(C)(i).

In general, federal agencies process incoming FOIA requests on a first-in/first-out basis. *See Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605, 616 (D.C. Cir. 1976) (holding that this first-in/first-out approach is generally consistent with an agency's responsibilities under FOIA).  In 1996, however, Congress amended FOIA to include a provision requiring federal agencies to establish procedures for the expedited processing of certain requests. *See* Electronic Freedom of Information Act Amendments of 1996, Pub. L. No. 104-231, § 8, 110 Stat. 3048.  Specifically, the 1996 amendments required federal agencies to

---

[5]      FOIA permits an agency to extend this twenty-day deadline by no more than ten days in "unusual circumstances" and upon written notice to the requester. 5 U.S.C. § 552(a)(6)(B)(i).  An agency seeking additional time to respond may also provide a requester "an opportunity to arrange with the agency an alternative time frame for processing the request." *Id.* § 552(a)(6)(B)(ii).  The defendant has provided no such notice or opportunity to the plaintiff in response to any of the relevant requests. *See* Compl. ¶ 57.

promulgate regulations "providing for expedited processing of requests for records—(I) in cases in which the person requesting the records demonstrates a compelling need; and (II) in other cases determined by the agency." 5 U.S.C. § 552(a)(6)(E)(i). Requests granted expedited processing under this section must be processed "as soon as practicable." *Id.* § 552(a)(6)(E)(iii).

State Department regulations implementing this provision provide that "[r]equests . . . shall be taken out of order and given expedited treatment whenever a requester has demonstrated that a 'compelling need' for the information exists." 22 C.F.R. § 171.12(b).[6] Thus, FOIA requests granted expedited treatment are taken out of the standard first-in/first-out queue and processed before all non-expedited requests, but after any requests previously granted expedited treatment. *See* Hackett Decl. ¶ 8. Finally, FOIA requests subject to litigation or a court-ordered production schedule may be further prioritized even among requests granted expedited processing. *Id.*

Set against this background, the Court turns next to the plaintiff's request for preliminary injunctive relief. As more fully explained below, because the plaintiff has failed to demonstrate that extraordinary injunctive relief is warranted to hasten the agency's response to the plaintiff's expedited requests, the plaintiff's motion will be denied.

**B.    The Plaintiff Fails to Demonstrate that Preliminary Relief is Warranted**

The parties do not dispute that this Court maintains the authority to grant the plaintiff's requested equitable relief. Indeed, FOIA grants this Court "jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld," 5 U.S.C. § 552(a)(4)(B), and the statute "imposes no limits on courts' equitable

---

[6]    As relevant here, these regulations define "compelling need" to include, *inter alia*, a demonstration that "[t]he information is urgently needed by an individual primarily engaged in disseminating information in order to inform the public concerning actual or alleged Federal Government activity." 22 C.F.R. § 171.12(b)(2) (indicating that "[n]ews media requesters would normally qualify"); *see also* 5 U.S.C. § 552(a)(6)(E)(v)(II).

powers in enforcing its terms," *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) (citing *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 19–20 (1974)).  In particular, "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses." *Id.* at 494 (internal quotations omitted) (quoting *Long v. IRS*, 693 F.2d 907 (9th Cir. 1982)).  The agency also largely concedes that the records the plaintiff seeks are relevant to a matter of immediate public interest and are urgently needed to serve that important purpose.  Indeed, by granting each of the plaintiff's requests expedited status, the agency acknowledged that it is bound to process these requests as expeditiously as possible.

In opposing the present motion, the State Department contests only that it is required to process fully the plaintiff's requests and produce all responsive, non-exempt records within a statutory twenty-day deadline, such that the plaintiff is entitled to production of the sought-after records in less than a month.  Def.'s Mem. Opp'n Pl.'s Mot. Prelim. Injunc. at 10 ("Def.'s Opp'n."), ECF No. 14.  Instead, given the agency's ongoing effort to process the plaintiff's requests as quickly as possible within the resource constraints imposed by its current workload, the agency argues that its current efforts are already in full compliance with its duty to produce the requested records "as soon as practicable." *Id.*

To assess whether the plaintiff is entitled to further acceleration of this ongoing process in the form of the injunctive relief requested, each of the four factors governing issuance of a preliminary injunction is examined.

### 1.    *The Plaintiff Fails to Establish a Likelihood of Success on the Merits*

Turning first to the plaintiff's likelihood of success on the merits, the plaintiff's contention that it is "exceedingly likely" to prevail in its claim against the agency relies largely

on its faulty assumption that the agency is under a strict mandate to process incoming FOIA requests in no more than twenty days. Pl.'s Mem. Supp. Pl.'s Mot. Prelim. Injunc. ("Pl.'s Mem.") at 5–11, ECF No. 3-1. Under the plaintiff's proposed construction of FOIA and implementing State Department regulations, the statute requires the agency to process all standard FOIA requests within twenty business days of receipt. *Id.* at 6. By extension, because requests granted expedited status must be processed *before* standard requests, *id.* at 6–7 (citing 5 U.S.C. § 552(a)(6)(E)(iii)), the plaintiff argues that an agency that "violates the twenty-day deadline applicable to standard FOIA requests presumptively also fails to process an expedited request 'as soon as practicable.'" *Id.* at 7 (internal quotations omitted) (quoting *Elec. Privacy Info. Ctr. v. Dep't of Justice*, 416 F. Supp. 2d 30, 39 (D.D.C. 2006) ("*EPIC I*")). Thus, given that more than four months have passed since the plaintiff filed the latest request at issue here, the plaintiff asserts that the agency's delay in processing its requests and producing responsive records constitutes a *per se* violation of its statutory obligations. *Id.*

The agency responds that the FOIA provision authorizing expedited processing is merely an "ordering mechanism" designed to allow requesters demonstrating an urgent need for agency records to "avoid the ordinary 'first in, first out' processing queue." Def.'s Opp'n at 11 (citing Hackett Decl. ¶ 8). According to the agency, because this provision requires only that agencies process requests granted expedited status "as soon as practicable," an agency's efforts to respond to an outstanding FOIA request must be reviewed under this "practicability" standard. *Id.* at 11. Further, relying on the D.C. Circuit's recent holding in *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 184 (D.C. Cir. 2013) ("*CREW*"), the agency argues that the failure to comply with the FOIA-imposed twenty-day deadline merely entitles a requester to pursue a claim in federal court without first pursuing an administrative appeal and

12

does not entitle a requester to the immediate production of sought-after agency records. *Id.* at 12–14.

As an initial matter, the agency is plainly correct that FOIA does not require *production* of all responsive, non-exempt documents within twenty days of receiving a request. As the *CREW* Court noted, under FOIA, "a distinction exists between a 'determination' and subsequent production." *CREW*, 711 F.3d at 188 (citing *Spannaus v. DOJ*, 824 F.2d 52, 59 n.7 (D.C. Cir. 1987)). Thus, after an agency determines which records are responsive to a particular request, and not otherwise exempt from disclosure, "the agency may still need some additional time to physically redact, duplicate, or assemble for production the documents that it has already gathered and decided to produce." *Id.* at 189. At that point, FOIA requires only that the agency "make the records 'promptly available,' which, depending on the circumstances, typically would mean within days or a few weeks of a 'determination.'" *Id.* (citing 5 U.S.C. §§ 552(a)(3)(A), (a)(6)(C)(i)). The plaintiff's request for an order requiring the agency to complete production of all records responsive to its various FOIA requests within twenty days therefore finds no support in either the statute or binding precedent, significantly undermining the plaintiff's contention that it is likely to prevail in its effort in the Complaint to obtain such relief.

Much the same, though FOIA generally requires agencies to make a *determination* as to its anticipated response to an incoming request within twenty days, the plaintiff misconstrues the consequences of an agency's failure to meet this deadline. As previously noted, FOIA generally requires agencies to determine within twenty days after receipt of a FOIA request "whether to comply with such request." 5 U.S.C. § 552(a)(6)(A)(i); *see also* 22 C.F.R. § 171.12(d). Under the plaintiff's cramped interpretation, this provision flatly requires agencies to provide an initial determination to all FOIA requesters no more than twenty days after receipt of their respective

requests. On the contrary, however, the *CREW* Court explained that this twenty-day deadline serves primarily as a means to obtain immediate judicial supervision over an agency's response to an outstanding FOIA request. *CREW*, 711 F.3d at 189. Thus, while in general a FOIA requester is "required to exhaust administrative appeal remedies before seeking judicial redress," *id*. at 184 (citing authorities), an agency's failure to make and communicate its initial determination before the statutory twenty-day deadline allows the requester to be deemed to have exhausted his administrative remedies and to seek immediate judicial review of the agency's processing of his request, *id*. at 184–85. Thus, "if the agency does not adhere to FOIA's explicit timelines, the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *Id*. at 189–90.

Indeed, far from demanding full collection and review of responsive documents within twenty days, FOIA explicitly provides for continued processing of a request pending the outcome of litigation challenging an agency's delayed response. Thus, where a requester seeks judicial review under this provision, "the agency may continue to process the request, and the court . . . will supervise the agency's ongoing progress, ensuring that the agency continues to exercise due diligence in processing the request." *Id*. at 189 (citing 5 U.S.C. § 552(a)(6)(C)). "Once in court, . . . the agency may further extend its response time if it demonstrates 'exceptional circumstances' to the court." *Id*. at 185 (citing 5 U.S.C. § 552(a)(6)(C)(i)). If the agency makes such a showing, "then so long as 'the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records.'" *Id*. (quoting 5 U.S.C. § 552(a)(6)(C)(i)).

Properly understood, then, the fact that the State Department did not issue a final determination within the twenty-day statutory deadline is sufficient to merit immediate judicial

review of the agency's diligence in responding to the plaintiff's requests. Standing alone, however, this fact does not conclusively demonstrate that the plaintiff is likely to prevail in its underlying effort to accelerate the processing of its FOIA requests and the ultimate production of any responsive, non-exempt records. *Accord EPIC II*, 15 F. Supp. 3d at 41.

Likewise, while the plaintiff argues that Judges on this Court have routinely granted the relief plaintiff requests where a FOIA requester demonstrates an urgent need for requested agency records, the plaintiff's reliance on distinguishable, non-binding precedent offers scant support for its contention that it is likely to prevail in the instant action. For example, the plaintiff relies on *EPIC I* for the proposition that a "*prima facie* showing of agency delay exists when an agency fails to process an expedited FOIA request within the time limit applicable to standard FOIA requests." *EPIC I*, 416 F. Supp. 2d at 39. There, however, the court cautioned that this presumption is "certainly rebuttable if the agency presents credible evidence that disclosure within such time period is truly not practicable." *Id.* at 39 & n.8. Indeed, though the court granted the plaintiff's request for full production of the requested records within twenty days, the court's holding rested heavily on the agency's failure to offer any evidence that such disclosure was impracticable, with the agency instead relying on "unsupported allegations" that further delay was warranted due to the breadth of the plaintiff's requests. *Id.* at 40. In fact, upon consideration of an additional factual proffer from the government, the *EPIC I* court subsequently modified its order to extend the deadline by which the defendant agencies were required to produce responsive documents by as many as 120 days. *See* Order Granting in Part & Denying in Part Def.'s Expedited Mot. Relief from Court's Order of February 16, 2006, *Elec. Privacy Info. Ctr. v. Dep't of Justice*, No. 06-0096 (HHK) (D.D.C. Mar. 24, 2006), ECF No. 18.

The plaintiff's reliance on *Wash. Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61 (D.D.C. 2006), is similarly misplaced. There, the plaintiff journalist sought visitor logs from the White House and the Vice President's residence from the Secret Service. *Id.* at 64. Concluding that the requested logs did not qualify as "agency records" within the meaning of the statute, however, the Service refused to process the plaintiff's FOIA request. *Id.* at 65. When the plaintiff sought a preliminary injunction compelling the agency to process the requested logs and thereby allow for litigation over any claimed FOIA exemptions, the court concluded that the plaintiff was likely to prevail on its underlying claim because the logs did in fact qualify as agency records subject to disclosure under FOIA. *Id.* at 68–74.[7] By contrast, here, the agency has not rejected or denied the FOIA requests or claimed that the records requested by the plaintiff are not subject to FOIA, and the plaintiff has presented no evidence that the agency intends to assert such a claim. *See generally* Pl.'s Mem; Pl.'s Reply Supp. Pl.'s Mot. Prelim. Injunc. ("Pl.'s Reply"), ECF No. 17. Quite the contrary, the State Department avers that processing of the plaintiff's requests has begun and that documents will be produced on a rolling basis in early 2016. Hackett Decl. ¶¶ 15, 22. Thus, this case again offers little support for the plaintiff's contention that it is likely to prevail in claiming that the agency's failure to process fully the plaintiff's FOIA requests within twenty days warrants issuance of an injunction mandating accelerated processing.

Nonetheless, even assuming that the statute does not impose a strict twenty-day deadline, the plaintiff further contends that the agency has failed to demonstrate that the present delay is

---

[7]    The D.C. Circuit subsequently held in another case that not all White House visitor logs maintained by the U.S. Secret Service are "agency records" within the meaning of the statute. *Judicial Watch, Inc. v. United States Secret Serv.*, 726 F.3d 208, 211 (D.C. Cir. 2013) (holding that records of visits to President and his advisors "are not 'agency records' within the meaning of FOIA" but such records of visits to other components within the White House complex are 'agency records' subject to disclosure under the Act").

the result of "exceptional circumstances" or that the agency is otherwise exercising due diligence in processing the plaintiff's requests. Pl.'s Reply at 9–15. In particular, describing the agency's FOIA caseload throughout the last decade, the plaintiff argues that the present backlog of requests is not unusual. *Id.* at 11–13. Thus, because "exceptional circumstances" is defined to exclude "a delay that results from a predictable agency workload of requests . . . , unless the agency demonstrates reasonable progress in reducing its backlog of pending requests," 5 U.S.C. § 552 (a)(6)(C)(ii), the plaintiff contends that the agency cannot rely on this provision to prolong its review of the plaintiff's requests, Pl.'s Reply at 10 (citing authorities). For its part, the State Department asserts that its FOIA resources "are currently strained to the limit by the volume of FOIA litigation—including but not limited to, FOIA litigation implicating the emails of former Secretary Clinton and other former officials." *Id.* (citing Hackett Decl. ¶¶ 6–7).

The D.C. Circuit has yet to delineate which party bears the burden in demonstrating either exceptional circumstance, or a lack thereof, in resolving a request for a preliminary injunction under FOIA. *See CREW*, 711 F.3d at 185. Even assuming *arguendo* that this burden falls on the agency, however, the Court is persuaded that the agency has demonstrated that the present circumstances are sufficiently unusual as to allow for some delayed processing even of expedited FOIA requests. First, although the data supplied by the plaintiff indicates a steady, but generally not dramatic, increase in newly filed FOIA requests received by the State Department between 2005 and 2014, this data excludes 2015, the *relevant* fiscal year. *See* Pl.'s Reply at 12. According to the agency, during Fiscal Year 2015, the State Department received nearly 23,000 new FOIA requests, representing nearly a 20% year-over-year increase. *Compare id. with* Def.'s Opp'n at 17 (citing Hackett Decl. ¶ 5). This dramatic one-year increase, which coincided with the period during which the plaintiff's own requests were filed and was at least partially the

result of the extensive media coverage associated with requests similar to the plaintiff's, certainly removes the present increase from the ambit of a "predictable agency workload."

Second, as previously noted, *supra* Part I, the agency is presently engaged in extensive litigation, involving nearly three dozen separate cases before multiple Judges on this Court. In addition to the agency's increased workload, the agency has presented evidence that this ongoing litigation has further strained the State Department's FOIA-related resources. Hackett Decl. ¶ 5–7, 15. Finally, as noted above, the State Department has demonstrated that it is taking steps to reduce the present backlog both through the dedicated work of current State Department employees, as well as other federal employees detailed to assist this effort, and through efforts to assign and train additional analysts detailed to the agency. *Id.* ¶¶ 6–7, 19–20. One of these newly detailed employees has been assigned to the plaintiff's requests, and the agency expects that a senior reviewer with the requisite expertise and credentials to conduct a final review of any responsive documents will become available in early 2016. *Id.* ¶¶ 15, 22.

For these reasons, at least at this stage of the litigation, the plaintiff has failed to demonstrate a substantial likelihood that it will prevail on the merits of its claim against the agency.

### 2.   *The Plaintiff Fails to Demonstrate Risk of Irreparable Harm*

The plaintiff argues that any further delay in the production of responsive, non-exempt records works an irreparable injury by depriving the plaintiff of its ability to "provide its unique analysis and reporting onto the 'breaking' and 'ongoing' news story" at issue here. Pl.'s Mem. at 9. Relying again on the authorities discussed above, the plaintiff suggests that this Court has routinely mandated the release of records subject to an outstanding FOIA request for records related to such "urgent news stor[ies]." *Id.* at 8 (citing authorities).

Without doubt, timely disclosure of information of potential public interest was among Congress's central aims in enacting FOIA. Indeed, Congress has long recognized that "information is often useful only if it is timely[, such that] excessive delay by the agency in its response is often tantamount to denial." H.R. Rep. No. 93–876, at 6 (1974). The D.C. Circuit likewise has emphasized this interest in prompt disclosure of time-sensitive information held by federal agencies, noting that "stale information is of little value." *Payne Enters.*, 837 F.2d at 494; *cf. The Nation Magazine v. Dep't of State*, 805 F. Supp. 68, 74 (D.D.C. 1992) (finding no irreparable harm where "[e]ven if [the] Court were to direct the speed up of the *processing* of their requests, [the plaintiffs] have not shown [in seeking a preliminary injunction] that they are entitled to *release* of the documents they seek" (emphasis in original)). Further, as previously noted, *supra* Part II.B., far from disputing the urgency of the plaintiff's journalistic aims, the agency in fact granted expedited status to each of the plaintiff's FOIA requests. Nonetheless, the agency counters that any injury stemming from continued delay is generally speculative and, in any event, minimal in light of the agency's existing efforts to process the plaintiff's requests on an expedited basis. Def.'s Opp'n at 17–19.

Though mindful of the plaintiff's significant interest in receiving timely access to documents with potential bearing on a matter of obvious public interest, the Court is not persuaded that any injury the plaintiff will experience absent the requested injunction will irreparably hinder its ability to continue its coverage. Contrary to the plaintiff's assertion that the agency has provided no indication of the time frame in which it expects to respond to the plaintiff's requests, the State Department has indicated both that it has assigned an analyst to coordinate the search for and processing of records potentially responsive to the plaintiff's requests, Hackett Decl. ¶ 15, and that a reviewer with the necessary credentials and expertise will

be available to assist in final processing in early 2016, *id.* ¶ 22.  Thus, the plaintiff's requested injunction would compel production of the sought-after materials, at most, only marginally sooner than the agency has indicated it intends to complete its processing of the plaintiff's request without such compulsion.  *Cf. Wash. Post*, 459 F. Supp. 2d at 74–75 (finding irreparable harm where the defendant agency refused entirely to process the plaintiff's request); *Aguilera v. FBI*, 941 F. Supp. 144, 151–152 (D.D.C. 1996) (finding irreparable harm in failure to release requested records prior to a suppression hearing at which the criminal defendant intended to rely on the requested materials); *Cleaver v. Kelley*, 427 F. Supp. 80, 81–82 (D.D.C. 1976) (same, with the plaintiff seeking release of requested records prior to his criminal prosecution).  Moreover, the plaintiff does not dispute that some records requested by the plaintiff have already been released publicly, and are available on the State Department's website, as a result of other, related FOIA requests.  Hackett Decl. ¶ 12.  Thus, the plaintiff has not been entirely stymied in its ability to review and provide press coverage of the records that are the subject of its FOIA requests.

Finally, even assuming the plaintiff maintains a unique interest in the accelerated processing of its own outstanding requests, this interest must be weighed against the corresponding interests of other similarly situated requesters.  As discussed below, the plaintiff's broad interest in timely disclosure is largely offset by both the interests of the plaintiff's fellow requesters and the public interest in careful review of potentially sensitive agency records.

### 3.   *Both the Balance of Equities and the Public Interest Weigh Against Imposition of an Arbitrary Disclosure Deadline*

Again relying on its misguided interpretation of FOIA's statutory deadlines, the plaintiff argues that any burden imposed by requiring the agency to process fully the plaintiff's requests within twenty days is easily outweighed by the plaintiff's asserted interest in prompt disclosure.

Pl.'s Mem. at 9–10.  Further, the plaintiff contends that the expedited status already granted to each the FOIA requests at issue obviates any claim of undue burden on the agency to process FOIA requests "according to an expedited processing schedule."  *Id.* at 9–10.  Finally, invoking the broad aim of public disclosure embodied by FOIA and the "great public and media attention associated with" Secretary Clinton's tenure at the State Department, the plaintiff contends that the requested injunction would serve the public interest by requiring earlier production of the requested records.  *Id.* at 10–11.

Even taking into account both the broad public interest in disclosure and the plaintiff's unique interest in obtaining a prompt response to its particular requests, however, the plaintiff's effort to jump to the head of the FOIA processing line would work a significant burden on both the agency and numerous interested parties.  For example, as the Court has summarized above, the agency already has committed significant resources to the expeditious processing of the recent deluge of Clinton-related FOIA requests.  *See supra* Part I.  In so doing, and in working to process all outstanding requests as quickly as possible, the agency has a responsibility to balance the public's interest in disclosure with equally important public and private interests in safeguarding potentially sensitive information.  *United Techs. Corp.*, 601 F.3d at 559.  With this in mind, the agency avers that the plaintiff's proposed twenty-day timeline is simply infeasible in light of the resources currently committed to other pending, and equally time-sensitive, requests.  Def.'s Opp'n at 20 (citing Hackett Decl. ¶¶ 15–23).  Many of the documents responsive to the plaintiff's requests likely include individuals' personal information, as well as sensitive national security and diplomatic material.  Requiring the agency to process and produce these materials under an abbreviated deadline raises a significant risk of inadvertent disclosure of records properly subject to exemption under FOIA.  Finally, though the plaintiff cites non-controlling

authority for the proposition that any overlapping requests may be advantaged by the plaintiff's requested injunction, Pl.'s Reply at 19 (citing *Nat. Res. Def. Council v. Dep't of Energy*, 191 F. Supp. 2d 41, 43 (D.D.C. 2002)), this does little to respond to the agency's concern that diverting resources to accelerate processing of the plaintiff's request necessarily will redound to the detriment of other requesters, many of whom submitted their expedited requested earlier than the plaintiff.

In short, forcing the agency to produce all requested records on an impracticably brief deadline raises a significant risk of harm to the public and private interests served by the thorough processing of responsive agency records prior to their ultimate production. At the same time, the plaintiff's effort to accelerate review of its requests necessarily will displace in processing priority those of third parties who submitted equally urgent requests *before* the plaintiff. Balanced against these substantial interests, the plaintiff's bald reliance on its own interest in obtaining the sought-after records and the more generalized public interest in the disclosure of those records does little to distinguish the plaintiff's requests from every other time-sensitive FOIA request. For that reason, the Court finds that the plaintiff has failed to demonstrate that any harm that may accrue to it, absent the requested extraordinary relief, clearly outweighs the irreparable harm that may result from granting the requested preliminary injunction.

## IV.   CONCLUSION

Having failed to demonstrate that any of the factors governing the Court's review of the instant motion point in its favor, the plaintiff cannot meet its burden to show that issuance of a preliminary injunction is warranted. Accordingly, for the foregoing reasons, the plaintiff's request for immediate relief on the merits of its underlying action, and the entry of an order

requiring the agency to process and produce all non-exempt requested agency records, along with a *Vaughn* index, within a month, is DENIED.

The plaintiff's claim therefore will proceed to the merits, with the Court exercising its authority to supervise the agency's progress in processing the plaintiff's requests while ensuring that the agency continues to exercise due diligence in doing so. *CREW*, 711 F.3d 180 at 189 (citing 5 U.S.C. § 552(a)(6)(C)). Consistent with the Standing Order governing proceedings in this matter, the parties shall jointly prepare and submit a report to the Court, by December 22, 2015, including (1) an estimate provided by the defendant of when the agency expects a final determination to be made; and (2) a proposed schedule for the filing of dispositive motions. Standing Order ¶ 3(b)(ii), ECF No. 4.


Date: December 8, 2015


                                        _____
                                        BERYL A. HOWELL
                                        United States District Judge